IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:07CR262 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | RECOMMENDATION |
| CLIFTON LYTLE, JR., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress filed by defendant Clifton Lytle, Jr. (Lytle) (Filing No. 11). Lytle is charged in the Indictment with possessing a firearm while he was pending a felony charge in the District Court of Douglas County, Nebraska, in violation of 18 U.S.C. § 922(n) (Count I) and a forfeiture count (Count II) in violation of 18 U.S.C. §924(d) and 28 U.S.C. §2461(c). Lytle seeks to suppress evidence obtained during a traffic stop by officers of the Omaha Police Department (OPD) on April 8, 2007, in Omaha, Nebraska.

The court held a hearing on the motion on August 30, 2007. Lytle was present for the hearing along with his retained counsel, Assistant Federal Public Defender Jennifer L. Gilg. The United States was represented by Assistant U.S. Attorney Russell X. Mayer. The court heard the testimony of OPD Officers Paul Hanson (Officer Hanson) and John Villwok (Officer Villwok). The court also received into evidence a street diagram (Exhibit 1). A transcript (TR.) of the hearing was filed on September 11, 2007 (Filing No. 20).

**FINDINGS OF FACT**

On Sunday, April 8, 2007, Officer Hanson was in uniform and a passenger in a marked OPD patrol car working routine patrol on the A shift (10 p.m. to 6:40 a.m.) (TR. 6). Officer Villwok, also in uniform, was assigned as Officer Hanson's patrol partner and was driving the patrol vehicle (TR. 6). The officers' duties involved answering radio calls and officer-related activities, such as traffic stops, business checks, and checking suspicious activities. On April 8, 2007, the officers were assigned to the Northwest Precinct of Omaha, i.e., west of 72nd Street and north of Dodge Street, on April 8 (TR. 7). Around 1

a.m. on April 8, the officers were sitting in the patrol vehicle parked southbound at 114th Avenue and West Maple Road conducting speed enforcement (TR. 10). At that location, West Maple Road is a median-divided east-west street with two lanes of traffic in each direction (TR. 10). The posted speed limit is 45 miles per hour (TR. 10).

Officer Hanson was using a laser gun, a device to measure the speed of vehicles (TR. 12). Prior to his shift, Officer Hansom calibrated and tested the laser gun to ensure it was working properly (TR. 12). Officer Hanson observed a car traveling west bound on Maple Road at a high rate of speed (TR. 12). Officer Hanson estimated the car to be traveling at 62 miles per hour (TR. 12). Officer Hanson directed the laser gun at the speeding car, centered the laser red dot on the car's headlight, pulled the laser gun trigger, received an acquisition tone from the laser gun, and received a reading of 60 miles per hour on the laser gun's display (TR. 12-13). Upon receiving this calculation, Officer Hansom informed his driver partner, Officer Villwok, of the 60 miles per hour speed (TR. 13). As the car drove by the officers parked location, the officers noted the car did not have a license plate (TR. 14). Officer Villwok then pulled out of the patrol car's parked position onto West Maple Road and followed the car (TR. 14). The officers activated the emergency lights on the patrol car, but the car did not immediately respond to the lights (TR. 15). Officer Villwok turned the patrol car's spotlight in order to get the driver's attention, and the officers observed the driver seemed to be moving or reaching toward the passenger side of the car (TR. 15; 50). The officers then activated the siren on the patrol car (TR. 15). The car eventually stopped in the traffic lane of the inside left turn lanes at the intersection of West Maple Road and 120th Street rather than on the shoulder (TR. 15). The officers pulled their patrol car behind the car and stopped (TR. 16). The officers radioed in to dispatch that they were conducting a traffic stop at 120th and West Maple Road (TR. 16). The officers observed that the car was a green four-door Cadillac with a single occupant, the driver, and no rear license plate or in-transit tag (TR. 16, 17).

Officer Villwok walked to the driver's side of the stopped car and Officer Hanson walked to the passenger side (TR. 16). While Officer Villwok engaged the driver (Lytle) in conversation, Officer Hanson shined his flashlight into the passenger compartment to be alert for any threats or weapons (TR. 18). Officer Villwok told Lytle he was Officer Villwok

with the Omaha Police Department and that Lytle was being stopped for speeding (TR. 52). Officer Villwok asked for Lytle's driver's license (Tr. 52). As Lylte was getting his driver's license out, Officer Villwok noted a Bud Lite beer cap sitting on Lytle's jeans (TR. 52). Officer Villwok could smell a strong odor of alcohol emanating from inside the Cadillac (TR. 52). Officer Villwok asked Lytle for paperwork on the Cadillac (TR. 53). Lytle opened the center console of the front seat to obtain the paperwork (TR. 53). As Lytle opened the console, Officer Hanson observed an empty handgun holster in the console (TR. 18). Officer Hanson immediately alerted Officer Villwok to the presence of the empty holster (TR. 19). Concerned that a handgun was present in the Cadillac, Officer Villwok asked Lytle about the holster and whether there was a gun in the Cadillac (TR. 54). Lytle said the holster was his dad's and that he did not think there was a gun in the car (TR. 54). Officer Villwok asked Lytle if Lytle had been drinking (TR. 54). Lytle responded that he did not have anything to drink (TR. 54). Officer Villwok told Lytle to get out of the car as Officer Villwok would be performing some sobriety tests (TR. 54). After Lytle got out of the car, Officer Villwok frisked Lytle for weapons, found none, and had Lytle walk to the rear of the Cadillac so Officer Villwok could perform a variety of field sobriety tests (TR. 54).

Officer Villwok testified he had been trained in performing various field sobriety tests through the National Traffic Safety Highway Administration in Texas and Nebraska (TR. 40). The training involves both classroom and practical exercises (TR. 40). The first test Officer Villwok performed was the horizontal gaze nystagmus (HGN) test to test the ability of the subject to gaze at a stimulus and follow it (TR. 41). A jerking of the eyes can indicate alcohol use (TR. 55). Officer Villwok found there were four of six HGN clues present in Lytle indicating a "pretty good percentage chance that he was impaired" (TR. 56). Next, Officer Villwok asked Lytle to recite the alphabet from the letter "J" to the letter "V" (TR. 56). The test is a divided attention test with the purpose of having the subject correctly recite the alphabet and to start and stop where instructed (TR. 42). Lytle started correctly at "J" but incorrectly continued on to "Z" (TR. 56). From Officer Villwok's experience, people who are intoxicated tend to go too far or stop too early (TR. 56). Next, Officer Villwok used a backward count test, i.e., count backward from 103 to 82, which is another divided attention test (TR. 42; 57). Lytle recited down to 100 and said "Oh" and

then 100 again, counted down to 96, paused, counted down to 82, and then stopped (TR. 57). Since Officer Villwok was seeing Lytle make mistakes in the tests, Officer Villwok decided to have Lytle perform the one-leg stand test (TR. 57). This test requires the subject to raise a foot up and count out loud, thus, dividing the subject's attention and checking the subject's balance (TR. 41; 58). Officer Villwok instructed Lytle to stand on one leg of Lytle's choosing, raise that foot six inches off the ground with the toe pointed out, and to count out loud, i.e., 1001, 1002, etc., for 30 seconds (TR. 57). Officer Villwok demonstrated the maneuver to Lytle (TR. 57). Lyle did poorly on this test as his foot came down after one second, and then came down again after three, four, and six seconds (TR. 58). Lytle explained the missteps by stating he was a "big dude" (TR. 58). Officer Villwok stopped the one-leg balance test and administered the Romberg balance test (TR. 58). This test involves the subject tilting his head back and closing his eyes and estimate the passage of 30 seconds until the subject believes 30 seconds have passed whereupon the subject is to bring his head forward and say "Stop" (TR. 58). This test permits the examining officer to test the internal clock of the subject to see how sped up or closed down it is (TR. 58). Lytle closed his eyes, tilted his head back, and began swaying slightly (TR. 59). Lytle opened his eyes after 22 seconds and did not say "stop" as instructed (TR. 59). From the five sobriety tests, Officer Villwok concluded that Lytle was showing some impairment from drinking and he would require Lytle to take an preliminary breath test, an Alco-Sensor test (TR. 59). The Alco-Sensor test showed a blood alcohol content (BAC) of .055, which is 70 percent of the driving under the influence (DUI) limit of .08 (TR. 60).

 Meanwhile, Officer Hansom radioed in to the OPD information channel on his portable radio and requested various checks on Lytle (TR. 20). Officer Hansom received back information that Lytle's driver's license was valid, but Lytle was to be considered extremely dangerous (TR. 20). Officer Villwok determined that due to Lytle's driving behavior, the moving violations, and the sobriety tests, Lytle was to be arrested for reckless driving (TR. 60). Lytle was placed in handcuffs and seated in the back of the OPD patrol car (TR. 61). Following Lytle's arrest, Officer Villwok searched the Cadillac and found a loaded Braco Arms 9 -millimeter semiautomatic handgun in the rear seat pocket of the passenger seat (TR. 61-62).

## CONCLUSIONS OF LAW

In his motion and brief, Lytle asserts the OPD officers did not have probable cause to stop or search his vehicle. Having determined the Cadillac was traveling at 60 miles per hours in a 45 miles per hour speed zone, the OPD officers were justified in stopping Lytle's Cadillac because "a police officer who personally observes a traffic violation has probable cause to stop the vehicle." ***United States v. $404,905.00 in U.S. Currency,*** 182 F.3d 643, 646 (8th Cir. 1999) citing ***Pennsylvania v. Mimms***, 434 U.S. 106, 109 (1977). Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. ***$404,905.00,*** 182 F.3d at 647; **see also** ***United States v. Sokolow***, 490 U.S. 1, 7 (1989). Additionally, a police officer may inquire about the motorist's destination, purpose of the trip and whether the police officer may search the vehicle. ***$404,905.00,*** 182 F.3d at 647; ***U.S. v. Allegree,*** 175 F.3d 648, 650 (8th Cir. 1999). The police officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, and perceptions of the police officer regarding illegal drug or alcohol use. ***$404,905.00,*** 182 F.3d at 647; ***Allegree,*** 175 F.3d at 650-51. Upon approaching the Cadillac, Officer Villwok smelled the odor of alcohol and saw a Bud Ice beer bottle cap on Lytle's jeans. For these reasons Officer Villwok was substantially justified in the detention of Lytle for additional investigation regarding driving a motor vehicle while impaired.

At the conclusion of the hearing, Lytle's counsel abandoned any complaint about probable cause to stop Lytle's Cadillac or his detention prior to his arrest. Lytle's assertion is that there was no probable cause to arrest Lytle for reckless driving. Consequently, the seizure of the firearm as incident to his arrest was unlawful (TR. 80-81).

The testimony of the OPD officers indicated: (1) Lytle was traveling 60 miles per hour in a 45 miles per hour speed zone at 1:00 a.m. on a Sunday evening; (2) Lytle did not stop his Cadillac after the OPD officers engaged their emergency lights; (3) Lytle stopped his Cadillac only after the OPD officers used the patrol car spotlight and siren; (4) the Cadillac stopped in a traffic lane of West Maple Road rather than on the shoulder; (5) Lytle

showed signs of alcohol impairment in five of the sobriety tests used by Officer Villwok; and (6) Lytle tested as having a blood alcohol content (BAC) of .055, which is 70 percent of the driving under the influence (DUI) limit of .08, using the Alco-Sensor meter.   Nebraska Rules of the Road provide that "[a]ny person who drives any motor vehicle in such a manner as to indicate a willful disregard for the safety of persons or property shall be guilty of willful reckless driving." Neb. Rev. Stat. § 60-6,214.  The first offense for willful reckless driving is a Class III misdemeanor.  Neb. Rev Stat. § 60-6,215.  As such, willful reckless driving is an arrestable offense.

Probable cause exists when the totality of circumstances demonstrate that a prudent person would believe an individual has committed or was committing a crime. ***Kuehl v. Burris***, 173 F.3d 646, 650 (8th Cir. 1999).  The courts must give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances."   ***United States v. Washington***, 109 F.3d 459, 465 (8th Cir.1997). Whether a traffic stop is pretextual is measured against a standard of "objective reasonableness." ***United States v. Cummins***, 920 F.2d 498, 501 (8th Cir. 1990), **cert**. **denied**, 502 U.S. 962 (1991) (quoting ***Scott v. United States***, 436 U.S. 128, 138 (1978)). Considering the totality of the circumstances which were known to Officer Villwot at the traffic stop, the court finds Officer Villwot had sufficient probable cause to arrest Lytle for wilful reckless driving on the morning of April 8, 2007.

Searches incident to arrest are *per se* reasonable.  ***Chimel v. California***, 395 U.S. 752 (1969); ***United States v. Robinson***, 414 U.S. 218 (1973).  "The arrest itself justified the search of [the defendant's] person . . . and of the passenger compartment of his automobile." ***United States v. Dawdy***, 46 F.3d 1427, 1430 (8th Cir.), **cert. denied**, 516 U.S. 872 (1995) (citations omitted).  The court finds the search of the Cadillac was incident to Lytle's lawful arrest after a valid traffic stop and reasonable detention.  The evidence found is admissible in the trial of this matter and Lytle's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Lytle's motion to suppress (Filing No. 11) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 25th day of October, 2007.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge